McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
BROWN, J., dissenting.
 {¶ 45} Because I believe that the informant's tip and subsequent police observations were not sufficient to justify a reasonable suspicion of criminal activity, I respectfully dissent. An officer may stop an individual if the officer has the requisite reasonable suspicion based upon specific, articulable facts that a crime has occurred or is imminent. Terry v. Ohio (1968), 392 U.S. 1, 21, 88 S.Ct 1868. In evaluating the propriety of an investigative stop, a reviewing court must examine the "totality of the circumstances" that provided the foundation for the officer's suspicion to warrant an inquiry. State v.Bobo (1988), 37 Ohio St.3d 177.
 {¶ 46} Here, the officers were informed via the dispatcher that the informant indicated a man was in a parking lot "possibly dealing drugs." However, there is no indication whatsoever that the tipster observed any illegal conduct and, upon arrival at the scene, there existed no further circumstances that would have given rise to reasonable suspicion to suspect appellee was engaging in drug trafficking or any other illegal activity. When viewed in their totality, the initial circumstances with which Officer Freetage was confronted indicated nothing other than that appellee was conducting legal business activities. Officer Freetage admitted that, when he observed appellee in his van in the parking lot, he saw "absolutely no criminal activity" to suggest illegal undertakings were afoot. Although the tipster had suspected appellee was engaged in drug dealing, Officer Freetage observed no drug transactions or "drug people" loitering nearby. Officer Freetage also admitted that the type of van in question was one that might be used to hold money for a check cashing business, as it was "armored" and had a service window on the side. Appellee testified that there was also a sign in the teller window indicating that checks could be cashed and the associated costs for doing so. The photographs admitted into evidence further reveal that the van had two large spotlights above each of the two teller windows, there was a counter on the outside of the van under the two teller windows, and one teller window had a blue laminated sign with a list of costs associated with cashing varying check amounts. One of the officers also testified that he could see a large amount of money inside the van. Officer Freetage admitted that he has never seen or heard of any drug dealer selling his wares from a white armored van in a parking lot, with a cost-of-services placard on the side for check cashing services and with cash in plain view.
 {¶ 47} In addition, appellee's actions after Officer Freetage engaged him in conversation did not provide any further grounds for reasonable suspicion. An investigatory detention must be no longer than necessary for an officer to confirm or dispel his suspicions that criminal activity is afoot. Florida v. Royer (1982), 460 U.S. 491, 500,103 S.Ct. 1319. Here, if Officer Freetage's suspicions were not dispelled after his initial observations, as explained above, they should have been dispelled after speaking with appellee. Appellee and Officer Freetage both testified that appellee immediately told the officer that he was cashing checks for Big Lots employees working the night shift. Appellee also testified that he had a money drawer in front of him, which contained cash readily visible to the officer, and he fanned an array of cashed employee checks to the officer so he could read "Big Lots" on the checks. Although appellee may have made brash comments to Officer Freetage, there was no evidence that he threatened the officer, and his demeanor suggests that he was trying to protect the large sum of money in his vehicle and conduct his usual legal business without interference. See Bobo, at 178-179 (suspect's conduct and appearance is a relevant factor); State v. Andrews (1991), 57 Ohio St.3d 86, 88
(same). Further, although Officer Freetage claimed appellee had refused to produce his driver's license, appellee testified he initially reached for his wallet when he was asked for his identification, but then Officer Freetage told him to keep his hands where he could see them, and the issue was never raised again. Notwithstanding, even if appellee had refused to produce his license, Officer Freetage admitted that appellee was under no legal duty to do so. See, also, State v. Jamison (May 11, 2001), Montgomery App. No. 18453 (while it was appropriate to stop a vehicle and investigate because there had been a report the driver had threatened another, as there was no basis to arrest him or search his car, the man had no duty to show any identification or to identify himself).
 {¶ 48} Although we agree that the telephoned tip that drug dealing was "possibly" occurring may have roused interest calling for further investigation, activity that merely piques the curiosity of a police officer will not suffice. See Delaware v. Prouse (1979), 440 U.S. 648,654-655, 99 S.Ct. 1391 (Brennan, J., dissenting). See, also, State v.Rozelle (Sept. 25, 2001), Franklin App. No. 00AP-1392 (knowing nothing more than that a traveler purchased a one-way plane ticket with cash from a drug "source city" was insufficient to constitute reasonable cause to search baggage). In my view, the officer's actions based upon his interest in appellee's circumstances in the present case, without any further specific or articulable facts to form reasonable suspicion that criminal activity was afoot, constituted an unlawful detention. Therefore, I would overrule the state's sole assigned error and affirm the trial court's suppression of evidence.